324-0722, Warren S. Winkler, LLC, Appellee v. Weld All, Inc. So as far as I can tell, your notice of appeal may have been premature. It was filed when there was a still pending motion to reconsider. And you filed the notice of appeal the same day that the judge had a briefing schedule on that motion. And then it looks to me as though on March 28th, and again, I'm assuming that he had authority to do this, he granted your motion to reconsider, right? He did, Judge. So what I want to know is, what is it that we can do for you today that you don't already have? And it's a shame that we couldn't have resolved it on, well, not on the 28th, but the court date following the 28th. But to answer your first question, Judge, I don't believe the appeal was premature. And I mean, correct me if I'm wrong. Maybe I'm reading it wrong. Well, but what is it you're looking for that you didn't already get? Well, at the point that the judge indicated he was going to grant our motion, we believe that the court didn't have jurisdiction because the case was on appeal. To the best that I could find in Westlaw and my research, once a notice of appeal is filed, literally that moment, jurisdiction is taken from the trial court and put into the appellate court where the appeal resides, only as to matters of scheduling and things like that remain in the trial court. And so any orders that were entered after the notice of appeal was filed were without jurisdiction, as best as I can tell from the case law. And this is why we did ask to have the record supplemented, not only to the record, to the report of proceedings, because if you look at the transcript from March 28th, we did acknowledge that the court was going to grant this. And what we wanted to do is we wanted to withdraw our appeal because we didn't want to create unnecessary work. And so what we asked the judge to do is continue it for two weeks so we could do that. And so it ended up getting continued to April 11th. The issue, though, is that we were after speaking to the opposing party, opposing counsel, we had concerns that if we were to withdraw the appeal, voluntarily withdraw the appeal midstream like that and have the judge enter an order after 30 days from the default, we were concerned that she could bring an argument and say, well, that was without jurisdiction. The court's jurisdiction ended 30 days after the entry of the final order. They withdrew their appeal. Jurisdiction is over. And the case is over. And without an agreed order to revest the court with jurisdiction at that point, to the best that I could tell from my research, we might be putting our client in a position that she could come back and say, no, there's no more jurisdiction, even if the court wanted to grant the motion. So where are you in the trial court? You have a trial date, right? We did have a trial date. It was stricken. I believe opposing counsel did file a motion to strike the trial date because she believed that, yes, the case was on appeal. And so there was no. But we did bring it to the court's attention that we asked for an agreed order just to revest. So there weren't any jurisdictional issues. So it wasn't any question. What you're saying is layman's terms. You were caught in a trick bag. I really was, Judge. And to the other point of that question, when the judge set the motion for a briefing schedule, we said, OK, fine. March 28th. Fine. Briefing schedule. Sure. But then I went home and I read Illinois Supreme Court Rule 303, and I realized that in Part 2, A2, at the very end, it says, no request for reconsideration of a ruling on a post-judgment motion will toll the running of time within which to file a notice of appeal. And so I realized that I didn't have any more time. I didn't have time. If I committed to the motion to reconsider and the judge denied my motion to reconsider, now I'm dead in the water with no ability to appeal. And I didn't want that situation for my clients. I just wanted to be clear on where things are in the trial court. So right now you're on hold, basically. On hold, yes. There is a status date in January. Is there a night, Mr. Tuminaro? Yes, just status on the appeal, just to see where, yes. And so moving on to our motion to vacate and the denial of the motion to vacate, we have sort of a two-part argument to this. The first issue that we took with the court's ruling on our motion to vacate, denying a motion to vacate, is that the judge said, if I could just have one moment. So the motion to vacate was heard on December 3rd of 2024. And what the judge said, he said, so if I do this, meaning grant my motion to vacate. If I do this, the wheels will fall off this entire call. So I understand the position you're in. I know that you want me to vacate the default, but I'm not going to vacate that default. And at that point, the judge didn't have any, there wasn't any discussion of the details of why the appearance wasn't filed that led to the default. It was simply that the court cited to his court order, he said, your client had a copy of my court order requiring him to file an appearance before the trial date. It wasn't done. The simple fact that it wasn't done means there was, and that's why I entered the default. And that's the only reason that I'm using to deny your motion to vacate. In addition to apparently he was concerned that if he does it for me, he'll have to do it for everybody on his call. And I understand that it's a small claims call. I do understand that. But was there a question? I'm sorry. Oh, I think I'm hearing myself from someone's microphone. Whittakus v. Electronic Co-op, which is a Fourth District case that I cite to, it's from 1960. But it says that a motion to vacate a default judgment under 1301e has to be decided on the facts of each case, not on a hard, fast rule, case-by-case basis. That statement that the court made, made it seem like it wasn't a case-by-case basis, that it's a general rule that we're in small claims court. I don't grant these types of motions, not for you, not for anyone. If I do it for you, I'm going to have a problem with my call. And so I'm denying your motion. And so that's the first part, that we believe that it was an abuse of discretion to employ such a hard and fast rule in opposition of what's said in the Fourth District case of Whittakus. But additionally, the court didn't consider any of the relevant factors, whether there was due diligence in not filing the appearance, whether there's an existence of a meritorious defense, whether the penalties to the defendant for keeping this default judgment, and then the hardships on the parties and the plaintiff for vacating, in other words, making the plaintiff proceed to trial versus having the default judgment. The court didn't consider any of those things in issuing his ruling on our motion to vacate the default. He basically said that there was a failure to act, that failure to act caused the default, and because there was a failure to act, I'm refusing to vacate. And I found something very interesting in the Second District case of Rockford Housing Authority versus Donahue. The court in that case, they had a defendant in front of them who failed to file their appearance, and the court, the defendant showed up for trial but had failed to file their appearance, and the court defaulted them and said, you didn't file your appearance like I told you, and so we're entering default judgment. That case went on appeal, and on appeal they said there was no other consideration of why that appearance wasn't filed or anything like that. It was just the simple fact that it wasn't filed, I'm entering default, and I'm refusing to vacate the default judgment, even though there was a timely motion in that case. What the court said, though, is if the same failure, and this is in deciding a 1301E motion to vacate the default, if the same failure to act that caused the default in the first place automatically justified the failure to vacate the default, Section 2-1301E would be meaningless. In other words, there would never be a situation where default judgment was vacated because the judge could just say, well, I entered default because you didn't do this, you're asking me to vacate this, and well, I'm looking at it, and you didn't do what I said, so no. And that undermines the whole purpose of 2-1301E. And so for all of those reasons, we believe that essentially defendant didn't get a fair shake, not at the default judgment stage and not at the motion to vacate the default stage. So we believe that there was an abuse of discretion not only to enter the default, but also to vacate a denial of our motion to vacate the default. So for those reasons, we would be asking to reverse the ruling of the trial court, both on the motion to vacate and the default judgment. I know I probably have some, I didn't time it, but if there's any other questions. Justice Peterson, you're muted. I was just saying, I was saying you're out of time, but do you have, do Justice Anderson, Justice Davenport, do you have any questions? None. Thank you. Thank you. Miss, is it Genson or Jensen?  Thank you. You may proceed. Thank you. I'd like to just address a couple of the points that the defendant has brought up. The first one was that there was no inquiry as to why he did not file an appearance. There still is no issue as to why he didn't file an appearance. And quite frankly, even when he hired an attorney, they didn't file an appearance until December. So that goes back to the, to the, his reference to the Rockford case. The Rockford case said he couldn't afford the filing fee. Here, there's no question. He was told in the order, which was very specific to this case, you have, you have to do three things. You have to file an appearance, you have to exchange exhibits for the trial, and you have to show up. And all you did was show up. That's why there was a default that was, that was entered. There was a question about whether there was a verification, whether verification by the attorney was good enough. Apparently it is. It's a fill-in-the-blank form, a small claims complaint. It's found on C-10. It says we, I, we, the undersigned, certify under penalties as provided by law, pursuant to 735 ILCS 5-1-109 in the Supreme Court Rule 137, that the statements set forth in this instrument are true and correct. Yes, it looks like his attorney did file, file it with his, with the attorney's signature. But the attorney's verifying that he has the, that he's verifying that the statements are set forth in there. No, he's certifying that the statements are set forth in there are true. Not that the statements are set forth therein, but that they are true and that he has personal knowledge thereof. So the question that I asked of the appellant was whether or not there had been any inquiry by the court at approve-up as to what personal knowledge the attorney had. That was my question. Well, if there was or if there wasn't, the verification states that he does have personal knowledge. Besides that, Winkler was in court at the time. So there could have been a verification at that time anyway. Counsel, appellants keeps on going on about, well, he didn't understand the order. He didn't get a copy of the order. It was very clear in the transcript. The court said, here's the order. You got to do these things. Pick up the order. He showed up to court. He showed up to court in April. He showed up to court in July. He showed up to court in October. Here's the court order. Did you comply with it? No, you didn't comply with it. There's no excuse for ignorance of the law. And besides it, we're not even dealing with whether he understood the law. We're dealing with did you or did you not comply with the court order? I told you to pick it up. I told you to read it. Did you do these things? Did you file an appearance? No. Did you exchange exhibits? No. The court asked, did you understand this? He said yes. Ms. Ginson, let me ask a question, if I may. One of the factors that influences a court is the discretion the court has on a motion to vacate is the relative hardships. And Mr. Tuminaro brought that up as one of the factors. Can you tell me, since it wasn't addressed in the brief or addressed by the court, what hardships would the plaintiff have endured or suffered if the default had been vacated? Additional attorney's fees to start with. A resolution of a claim that's a small claim. It could have been resolved the first time they ever showed up at court. I was talking about if the default had been vacated, not the first time that they showed up in court. So I asked if the default had been vacated. So that presumes that you have proceeded through the time that the judgment had been entered and now we are at the vacating of the default. Okay. So you vacate the default and now the proceedings go on. Well, the proceedings go on. He's still paying his attorney. The litigation is still proceeding at a snail's pace for this type of case. It's just a small claims case. I mean, nobody wants to do it. Let me back up a little bit. Appellant had said, oh, well, it should be vacated because I've got a meritorious defense. That's all he said. He didn't say what a meritorious defense was. He just says, well, I've got one. That's not good enough. That's not ever good enough. He did say it, but he didn't say it until the motion to reconsider.  And if you've got to say you've got a meritorious defense, tell me what it is. Tell me what your facts are. Sign an affidavit saying this is my meritorious defense. There's no meritorious defense here that was known. And it certainly wasn't available for the plaintiff to know on the date of trial. So the answer to my question was attorney's fees, correct? Attorney's fees and the litigation going on when it shouldn't have. He's lost interest on a judgment. He's lost the use of his $10,000. Sure. There's hardships. All for somebody who just shows up and is just tossing the court's orders aside and not paying attention to any of them. I mean, how hard is it to file an appearance? Well, like I said, an appellant didn't even file one until December, so apparently there's something going on with filing appearances. Appellant had stated that the order was entered based solely on a failure to file an appearance. And like I said and mentioned, there were three things in that order. And so it wasn't just solely not the failure to file an appearance. Counsel had mentioned that the court was following a hard and fast rule. That is absolutely incorrect. It's not a hard and fast rule because there was an order that was entered that was tailored to this particular case. This particular case. Do these things and then we're going to go to trial on October 30th. And it didn't happen. That is not a hard and fast rule. That's a tailored order for this case. And the last thing I just want to mention is that I will agree with the appellant that the notice of appeal will stop the jurisdiction of the trial court. And after 30 days of a final judgment, there can't be any substantive orders changed because the trial court wouldn't have any jurisdiction anymore. So, for all of those reasons, we ask that the court affirm the judgment. Do you have any questions, Justice Davenport or Justice Anderson? No, thank you. Okay. Then, Mr. Tuminaro, you have the opportunity in rebuttal. Thank you, Judge. Just briefly. There were several months between the time the order was entered requiring defendant to file his appearance and the trial date where he was defaulted. But there's a few points about that. Number one, although a few months had elapsed, he was given one chance to do it. There weren't multiple chances where there were multiple orders saying, sir, do this or you're going to be defaulted. It was just a simple order. It was an order that was entered. It was spelled out in great detail. He needed to file an appearance. And he didn't do it, but he had that one chance, and then he was defaulted. So, there weren't multiple chances. He was standing right in front of the court. It's not a situation where he missed court or he was, you know, just simply tossing the order to the side, like flouting the judicial authority of the court. It was a simple matter of him being ignorant to the process. And he didn't realize that by failing to file an appearance or even following the court's order, he would be landing himself in this position. I don't even think he knew what a court order was. On the date he was defaulted, the judge said, do you have a copy of the order? And I think the court actually had to spell out what a court order was because my client just did not know. And the court did have some other options available to it. Other than defaulting him while he was standing right there, they could have passed the case so he could go file an appearance. And then come right back. And so, for those reasons, I still do submit that it was an abuse of discretion to fail to enter the default judgment and then to deny our motion to vacate. We didn't spell out the meritorious defense in the motion to vacate. One of the justices pointed out we did spell it out in our motion to reconsider, but we did not spell it out in the motion to vacate. It's not technically required, but we did plead it, but we just didn't spell it out in great detail in the motion to vacate. But it was there. And that's it. That's all I have to say, Judge, and we would ask that you find it in our favor. Thank you. And do you still stand in the position you, I think, argued down at the trial court that the motion to reconsider, the denial of the motion to vacate, did not toll the time to file your appeal? That you had to file your appeal, and once that's done, that divests the trial court of jurisdiction? Yes, I stand on that position, that we, had we not filed the appeal at that point and then lost the motion to vacate, we would be dead in the water. We couldn't appeal at that point. The motion to reconsider didn't toll the time frame under 303A. And so we do stand on that position. Justice Davenport, Justice Anderson, do you have any additional questions? I have none. Thank you. Okay, thank you both for your arguments, and we will take this matter under advisement and issue a decision in due course.